UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARABA ARMSTRONG, individually and on
behalf of all others similarly situated,

        Plaintiff,

    v.

ZILLOW GROUP, INC., ZILLOW, INC., and
ZILLOW HOME LOANS, LLC,

        Defendant.

NO.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

    1.    This case is about kickbacks that Defendants Zillow Group, Inc., Zillow, Inc. and Zillow Home Loans, LLC (together, "Zillow") gave to real estate brokers, in the form of access to valuable customer leads, explicitly in exchange for sending those customers to Zillow's financing arm for mortgages. That arrangement is per se illegal under federal law. Moreover, because the true nature of the kickbacks and obvious conflicts of interest are concealed from the consumer (at Zillow's direction), the conduct also violates Washington statutory and common law prohibitions concerning consumer deception and the broker's fiduciary duties.

    2.    Zillow holds an undisputedly dominant position in the American residential real estate market. It operates the most-visited residential real estate marketplace in the United States and controls roughly two-thirds of all online home-listing traffic—more than four times the daily

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

active users of its nearest competitor.[1] By virtue of that dominance, Zillow can acts as the initial gatekeeper between millions of prospective homebuyers and real estate professionals, controlling the flow of the consumer leads that drive residential real estate transactions nationwide.

3. For years, Zillow has been trying to leverage that monopoly power to gain market share in other aspects of the home buying process, most significantly, in mortgage financing through its lending division Zillow Home Loans ("ZHL").

4. Since approximately 2019,[2] the company has invested hundreds of millions of dollars in its mortgage operation. Despite a cumulative loss since 2017 of $283 million, rather than scaling back, Zillow has "doubled, tripled, and quadrupled down" on the division, maintaining high operating expenses even during industry downturns and declaring ZHL to be a "key part" of its long-term growth strategy.[3]

5. Zillow's reason for continuing to fund an unprofitable mortgage business is to advance the company's broader "housing super app" strategy, through which it seeks to capture every stage of the home-buying journey on a single platform.[4] By integrating ZHL into the same

---

[1] Zillow Group Investor Deck – February 2025, Zillow Group, (Feb. 11, 2025), available at https://investors.zillowgroup.com/investors/news-and-events/events-and-presentations/presentations/presentation-details/2025/Zillow-Group-Investor-Deck---February-2025/default.aspx.

[2] *See* Emma Newburger, *Real estate website Zillow expands into the mortgage business*, CNBC (Apr. 2, 2019), https://www.cnbc.com/2019/04/02/real estate-website-zillow-expands-into-the-mortgage-business.html?msockid=120da737245263c312f7b24a255562ed; *Zillow Home Loans FAQs* , Zillow, https://www.zillow.com/homeloans/zillow-home-loans-faqs/?msockid=120da737245263c312f7b24a255562ed (last visited Oct. 24, 2025).

[3] *See* Mike DelPrete, *The Path Forward for Zillow Home Loans* (Mar. 1, 2023), https://www.mikedp.com/articles/2023/2/28/the-path-forward-for-zillow-home-loans. Mike DelPrete is an internationally recognized expert and thought leader in real-estate technology. He serves as a Scholar-in-Residence at the University of Colorado Boulder, where he leads the Real Estate Technology program and publishes widely cited analyses on trends in online real-estate platforms. His research and commentary are frequently featured in leading financial and industry publications—including The New York Times, The Wall Street Journal, The Financial Times, and The Economist—for their insight into the strategies of major real-estate technology firms, including Zillow. DelPrete advises and consults for leading property portals and real-estate technology businesses worldwide, invests in emerging ventures, and provides strategic guidance at the board and governance levels. DelPrete, *About Mike,* https://www.mikedp.com/mike-delprete (last visited Oct. 29, 2025).

[4] *See* Zillow 10-K Annual Report (Feb. 11, 2025) (describing the "housing super app" as "an ecosystem of connected solutions for the tasks and services related to moving.").

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

consumer funnels that generate home-buyer leads and agent connections, Zillow seeks to capture additional revenue from the same transaction that it facilitated by linking consumers with an agent by pushing the buyer to finance with ZHL.[5] Internal disclosures and independent industry commentary consistently identify mortgage "attach" or adoption rates as a primary lever for ZHL scale and economics.[6]

6. To accomplish that expansion, Zillow began explicitly leveraging its greatest asset—lead generation. This lead flow is the foundation of Zillow's business model and the primary source of its leverage and influence over real-estate professionals nationwide.

7. Zillow channels this lead-generation power through its Zillow Premier Agent program ("Zillow Premier"), a lead-distribution and advertising platform that serves as the centerpiece of its real-estate business. Through Zillow Premier, participating agents and brokerages ("Participating Agents") pay for or earn access to consumer inquiries generated on Zillow's website and mobile applications, allowing Zillow to control which agents receive buyer leads and how those leads are distributed. By integrating its lead-generation system into Zillow Premier, Zillow created a closed network in which the company not only sells advertising to agents but also dictates the conditions for remaining in the program.

8. Beginning in or around 2022, Zillow extended this integrated system to ZHL through its Flex program. Zillow paired Premier Agent partners with ZHL loan officers, and, over time, incorporated ZHL-related metrics into agents' performance framework, requiring

---

[5] *See* Zillow Q3 2022 Shareholder Letter, available at https://investors.zillowgroup.com/investors/financials/quarterly-results/default.aspx(opens in a new window)

[6] *See* Zillow Q3 2022 Shareholder Letter, available at https://investors.zillowgroup.com/investors/financials/quarterly-results/default.aspx(opens in a new window); *Flex Program Standards*, Zillow Premier Agent, https://www.zillow.com/z/flex-performance-terms/performance-standards/ (last visited Oct. 23, 2025); DelPrete, *The Path Forward for Zillow Home Loans* (Mar. 1, 2023), https://www.mikedp.com/articles/2023/2/28/the-path-forward-for-zillow-home-loans.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Participating Agents to meet specific ZHL pre-approval quotas as a condition for maintaining access to these high-value leads.[7]

9. Agents who meet ZHL pre-approval quotas receive better leads and placement, while those who fail to do so face reduced volume or removal from the program—a textbook *quid pro quo* that turns Zillow's referral network into a mortgage funnel in which Zillow controls the flow of valuable buyer leads.

10. Zillow's system harms consumers, who are robbed of the disinterested advice of their fiduciary real estate agent, and instead are unknowingly steered towards ZHL's limited and often uncompetitive mortgage products.

11. Industry reviews consistently rate ZHL average on affordability, with limited loan types and no rate transparency, and advise borrowers to comparison-shop multiple lenders.[8] Yet, Zillow's user interface design (including a pre-checked checkbox indicating "interest in Zillow Home Loans," which ensures that buyers are automatically routed to ZHL) and Zillow's creation of undisclosed incentives for its Participating Agents, funnel buyers and borrowers into ZHL before they can receive independent advice or meaningfully compare lenders.[9]

12. Zillow is improperly wielding its monopoly power to exert enormous pressure on real estate agents, who are supposed to be acting as fiduciaries towards their clients. By doing so, Zillow is fundamentally cheating a carefully regulated system in order to win more of the

---

[7] *See* Zillow Q3 2022 Shareholder Letter, available at https://investors.zillowgroup.com/investors/financials/quarterly-results/default.aspx(opens in a new window); *Flex Program Standards*, Zillow Premier Agent, https://www.zillow.com/z/flex-performance-terms/performance-standards/ (last visited Oct. 23, 2025); DelPrete, *The Path Forward for Zillow Home Loans* (Mar. 1, 2023), https://www.mikedp.com/articles/2023/2/28/the-path-forward-for-zillow-home-loans.

[8] *See, e.g.*, Molly Grace, *Zillow Home Loans Review 2025: No-Frills Online Lender*, Business Insider, https://www.businessinsider.com/personal-finance/mortgages/zillow-home-loans-review (last updated Jan. 23, 2025); Andrea Riquier, *Zillow Home Loans Review 2025*, Forbes (Jan. 4, 2024), https://www.forbes.com/advisor/mortgages/zillow-home-loans-reviews/#what_zillow_home_loans_offers_section.

[9] *See* DelPrete, *Zillow Pressures Flex Teams to Perform* (Oct. 25, 2023), https://www.mikedp.com/articles/2023/10/25/use-zillow-home-loansor-else.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

mortgage financing market, and the result is that home buyers do not get objective, clear-eyed advice from their trusted real estate agents. Instead, and without their knowledge, buyers are being steered towards ZHL mortgages, not because they are a better product, but because the agents are *required* to do so by Zillow in order to get the leads needed for their business. And ZHL mortgages are most certainly not better. Yet, ZHL continues to grow, not through the merits of the product, but because of Zillow's underhanded tactics.

13. Zillow's policies and conduct violate the law in several clear ways.

14. ***First***, Zillow's exchange of valuable leads in return for mortgage sign-ups is a clear violation of Section 8(a) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), and Regulation X, 12 C.F.R. § 1024.14, which forbids giving or accepting any fee, kickback, or "thing of value" pursuant to an agreement that business incident to a real estate settlement service will be referred.

15. ***Second***, Zillow's practices are unfair and deceptive under the Washington Consumer Protection Act ("WCPA"), RCW 19.86.010, *et seq.*, because they create undisclosed conflicts that have the capacity to mislead reasonable consumers about the independence of Participating Agents and the neutrality of Zillow's platform, and they offend established public policy embodied in RESPA and fiduciary duties established by state law.

16. ***Third*****,** Zillow aided and abetted breaches of fiduciary duty by Participating Agents. Zillow knew agents owe duties of loyalty, full disclosure, and impartial advice; it publicly says so in its own consumer education. Yet Zillow imposed ZHL quotas, monitored calls, used scripts, and ran leaderboards and coaching to induce agents to steer clients to ZHL—in breach to those duties.

17. Plaintiff Araba Armstrong, individually and on behalf of all others similarly situated, therefore brings this action to halt Zillow's ongoing violations of law, to obtain disgorgement and restitution of unjust gains, and to secure appropriate relief for consumers

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

injured by Zillow's unlawful referral and steering practices in the provision of real estate settlement services.

**JURISDICTION AND VENUE**

18. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. The Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the putative class exceeds 100 members, at least one class member is a citizen of a different state than at least one Defendant, and the amount in controversy exceeds $5,000,000 in the aggregate.

19. This Court has personal jurisdiction over Defendants, and venue is proper in this District under 28 U.S.C. § 1391(b), because Defendants reside in this District, transact substantial business here, and a substantial part of the events or omissions giving rise to the claims occurred here.

**PARTIES**

20. Plaintiff Araba Armstrong is a citizen of Anchorage, Alaska. In 2024, Plaintiff was connected with a Participating Agent through Zillow's platform and, at that agent's direction, obtained mortgage pre-approval and subsequently a mortgage loan from Zillow Home Loans in connection with the purchase of a residential property in Alaska. Plaintiff was not informed of Zillow's quotas, incentives, or requirements linking the agent's access to Zillow leads to referrals or pre-approvals with ZHL. At the time she obtained her mortgage loan, following her communications with her Participating Agent, she was led to believe that she was obligated to use ZHL for her mortgage. This was the first residential property that Plaintiff had ever purchased.

21. Defendant Zillow Group, Inc. ("Zillow Group") is a Delaware corporation with its principal executive offices located at 1301 Second Avenue, Floor 31, Seattle, Washington 98101. Zillow Group is the publicly traded parent company that controls the Zillow online real

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

estate marketplace and a range of related businesses and services. Zillow Group describes itself in its 2025 Form 10-K as "the most visited and trusted brand in the online real estate industry," reporting 241 million average monthly unique users and 9.3 billion visits in 2024.[10]

22. As of February 2025, Zillow Group's "portfolio of affiliates, subsidiaries and brands" includes Zillow Premier Agent, Zillow Home Loans, Zillow Rentals, Trulia, StreetEasy, HotPads and Out East.[11] Zillow Group also provides a suite of marketing software and technology solutions for the real estate industry.[12] According to its subsidiary disclosures, Zillow Group's material incorporated subsidiaries include MFTB HoldCo, Inc., Zillow, Inc., Zillow Insurance Services, LLC, and Zillow Risk Solutions Inc.[13]

23. Defendant Zillow, Inc. ("Zillow, Inc.") is a Washington corporation and wholly owned subsidiary of Zillow Group. Upon information and belief, Zillow Inc. operates Zillow Group's flagship website, www.zillow.com, and related mobile applications. Zillow Inc. provides digital real estate listings and operates advertising and lead-generation programs that connect consumers with real estate professionals throughout the United States. Zillow is "the most visited real estate website" in the country,[14] and the "#1 U.S. residential real estate app, with about 4x more daily active users than the next company in the category."[15]

24. Defendant Zillow Home Loans, LLC ("ZHL") is a Kansas limited liability company with its principal place of business at 2600 Michelson Drive, Suite 1201, Irvine, California 92612. ZHL is a wholly owned subsidiary of Zillow Group and serves as its "mortgage origination and affiliate lender."[16] ZHL is a licensed residential mortgage lender (NMLS ID

[10] Zillow 10-K Annual Report (Feb. 11, 2025).

[11] Zillow 10-K Annual Report (Feb. 11, 2025).

[12] Zillow 10-K Annual Report (Feb. 11, 2025).

[13] Zillow 10-K Annual Report (Feb. 11, 2025).

[14] https://investors.zillowgroup.com/investors/overview/default.aspx (last visited Oct. 23, 2025).

[15] https://www.zillow.com/z/corp/about/ (last visited Oct. 23, 2025).

[16] Zillow 10-K Annual Report (Feb. 11, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

10287) authorized to conduct mortgage-lending activities in 49 U.S. states and the District of Columbia. According to Zillow Group, ZHL "originates mortgage loans and then generally sells the loans on the secondary market[,]" rather than servicing them.[17] This volume-driven model gives Zillow incentive to maximize loan originations through ZHL, regardless of whether those loans offer consumers the most favorable terms. Zillow Group reported that its mortgage-origination volume totaled over $3 billion in 2024, compared with $1.53 billion in 2023, and that its mortgage-segment revenue increased by 51 percent, from $96 million to $145 million.[18] Through its integration with the Zillow website and Zillow's Premier Agent and Flex programs, ZHL participates in the referral network and financing practices challenged in this Complaint.

25.    Defendants Zillow Group, Zillow, Inc, and ZHL (collectively, "Defendants") engage in residential real estate and mortgage-lending activities that constitute "settlement services" and involve "federally related mortgage loans" within the meaning of RESPA. See 12 U.S.C. §§ 2602, 2607; 12 C.F.R. § 1024.2. Each Defendant is a "person" under 12 U.S.C. § 2602.

## FACTUAL ALLEGATIONS

### A. Industry Background and Regulatory Requirements

26.    As Zillow acknowledges, "[r]eal estate is incredibly personal — and for most people, it's the biggest transaction they'll ever make."[19] The process is fragmented, complex, and highly regulated, involving numerous intermediaries—real estate agents, mortgage lenders, title companies, and closing agents—each of whom performs a distinct role in the consumer's home-buying journey. Because of this complexity, consumers routinely rely on the guidance and recommendations of their real estate agents when selecting other settlement-service providers such as mortgage lenders.

---

[17] Zillow 10-K Annual Report (Feb. 11, 2025).

[18] Zillow 10-K Annual Report (Feb. 11, 2025).

[19] *About*, Zillow, https://www.zillow.com/z/corp/about/ (last visited Oct. 23, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

27.     Real estate agents are state-licensed professionals who are obligated by law and professional ethics to act in their clients' best interests. Licensed agents must complete required education, pass state examinations, and comply with state licensing laws that recognize their fiduciary duties of loyalty and full disclosure to their clients. For example, in Washington, real estate agents must go through the licensing process, which requires 90 hours of pre-licensing education, pass the state licensing exam, and then complete at least 30 hours of continuing education every two years.[20] Agents may work independently or under the supervision of licensed brokers, but in all cases, their professional role is to advise clients impartially and to avoid conflicts of interest.

28.     When agents or brokers accept payments, commissions, or other things of value from settlement-service providers in exchange for steering clients to those providers, their advice becomes conflicted. Such conduct undermines consumer trust, distorts competition among lenders and other service providers, and corrupts the real estate agents' relationship with their clients.

29.     To address these concerns, Congress enacted the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. Among its central protections, Section 8(a) of RESPA prohibits any person from giving or accepting "any fee, kickback, or thing of value" pursuant to an agreement or understanding that business incident to a real estate settlement service will be referred to any person. 12 U.S.C. § 2607(a). Regulation X, which implements RESPA, confirms that a "thing of value" includes not only money but also "the opportunity to participate in a money-making program." 12 C.F.R. § 1024.14(d).

30.     In addition to federal law, Zillow's conduct is governed by state statutes and common law principles. Washington's Consumer Protection Act ("WCPA"), RCW 19.86.020, prohibits unfair or deceptive acts or practices in trade or commerce that affect the public interest.

---

[20] *See Get your license: Real estate brokers*, Washington State Dept. of Licensing, https://dol.wa.gov/professional-licenses/real-estate-brokers/get-your-license-real-estate-brokers (last visited Oct. 28, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

The statute embodies a broad state policy of transparency and fairness in consumer markets and applies to deceptive practices originating from or directed by businesses headquartered in Washington.

31. Real estate agents owe fiduciary duties of loyalty, care, and full disclosure to the clients they represent. These duties require agents to act solely in their clients' best interests and to avoid or disclose any conflicts that could compromise impartial advice. Although Zillow is not a fiduciary, by designing and enforcing systems that pressure Participating Agents to favor Zillow Home Loans over independent lenders, it aids and abets breaches of those duties. All fifty states recognize a cause of action for holding non-fiduciaries liable when they knowingly and substantially assist another in breaching fiduciary obligations. Zillow's conduct, as alleged, falls squarely within those principles.

**B. <u>Zillow's Business Model</u>**

32. Zillow Group, Inc. and its subsidiaries operate the largest digital real estate platforms in the United States. It not only hosts property listings, but connects consumers to residential real estate agents and mortgage lenders.

33. Zillow's February 2025 Investor Presentation acknowledges Zillow's domineering position in the residential real estate marketplace—claiming that it obtains 66 percent of all U.S. real estate web traffic and more than ***four times*** the daily active app users of its nearest competitor.[21] This makes it the primary initial gatekeeper between millions of homebuyers and real estate professionals that it promotes on its platform.

---

[21] Zillow Group Investor Deck – February 2025, Zillow Group, (Feb. 11, 2025), available at https://investors.zillowgroup.com/investors/news-and-events/events-and-presentations/presentations/presentation-details/2025/Zillow-Group-Investor-Deck---February-2025/default.aspx.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Zillow Group Investor Deck – February 2025, Slide 7*

34. Through an integrated system, Zillow links its advertising, agent-referral, and lending operations so that the same consumer is captured and monetized at multiple stages of the transaction. In this unified transaction funnel, buyers and agents are guided through affordability tools, touring, and pre-approval services offered by Zillow. The funnel's default paths steer users toward ZHL and other Zillow-affiliated services:

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992



*Zillow Group Investor Deck – February 2025, Slide 16*

35. Zillow Group, Inc. operates two interconnected businesses relevant here: (1) its real estate agent referral network, marketed under the Premier Agent and Flex programs, and (2) its affiliated mortgage-lending arm, Zillow Home Loans. Zillow uses its control over lead distribution in its referral network to pressure and incentivize real estate agents to funnel homebuyers toward Zillow Home Loans, while discouraging referrals to independent lenders.

36. Through Zillow.com and affiliated mobile apps, Zillow distributes consumer inquiries ("leads") to Participating Agents. But receipt of those leads is effectively conditioned on the agents' willingness and ability to direct consumers toward Zillow's affiliated mortgage-lending business, ZHL

37. By tying valuable leads to mortgage referrals, Zillow compromises the independence of Participating Agents and the fiduciary duties they owe to clients. Agents reliant on Zillow for a substantial share of their business are incentivized to meet Zillow's internal metrics for ZHL referrals rather than to recommend the mortgage products best suited to their

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

clients' needs. As a result, consumers are routinely steered away from alternative programs that might better serve the consumer's interests, such as first-time-homebuyer assistance, USDA loans, or manufactured-housing financing that ZHL does not offer. One Participating Agent in Virginia reported that "[t]hey offer barely any programs for first-time homebuyers . . . . If I sent a first-time homebuyer there that qualified with them, [the buyer] would miss out on some really good first-time homebuyer programs that offer significant rebates."[22]

38. This structure also deprives consumers of meaningful ability to comparison-shop among lenders. According to public reporting, Participating Agents have discouraged clients from obtaining competing loan quotes, and consumers who obtained their mortgages through ZHL paid higher interest rates and fees than comparable borrowers who financed their homes through independent lenders.

### C. Zillow Home Loans

39. In its Q3 2022 Shareholder Letter, Zillow announced a strategic shift to make ZHL the centerpiece of its home-buying ecosystem. Zillow stated that it would "overhaul [its] current mortgage funnels away from third-party lead generation and toward Zillow Home Loans," explaining that it intended to equip its loan officers with new tools "to help the customers who come their way." Zillow described its "future state" as one in which "customers who start with Zillow Home Loans work with a Premier Agent partner to whom [Zillow has] connected them, and customers who start with a Premier Agent partner through [Zillow's] touring product are also choosing Zillow Home Loans as their mortgage provider." It concluded that its objective was "to increase the number of purchase loans, loans per officer, and Zillow Home Loans customer adoption rate."[23]

---

[22] *Zillow: Realtors Are Required to Drive Business to Zillow's In-House Lending Arm, Potentially Raising Buyer Costs; Agents Express Concern They Are Violating RESPA*, 13 CAPITOL FORUM 843 (Oct. 21, 2025).

[23] *See* Zillow Q3 2022 Shareholder Letter, available at https://investors.zillowgroup.com/investors/financials/quarterly-results/default.aspx(opens in a new window)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

40. Zillow's February 2025 Investor Presentation demonstrates how central the mortgage sector—and ZHL in particular—has become to the company's growth strategy, as it identified a "significant For Sale (Residential + Mortgages) revenue growth opportunity" and "a clear path to $1 billion incremental organic revenue" through conversion of "more customers already in [its] funnel[.]":[24]

**The Zillow Investment Opportunity**

**Leading brand and engaged audience:**
"Zillow" is searched more than the term "real estate"[1] with 4x the daily active app users of nearest competitor

**Significant For Sale (Residential + Mortgages) revenue growth opportunity:**
$1.7B For Sale revenue in 2024 with clear path to $1B incremental organic revenue as we roll out existing products
Larger long-term opportunities to convert more customers already in funnel and expand product suite

**Clear Rentals revenue growth path:**
$453M Rentals revenue in 2024 with path to $1B+ revenue

**Executing on a strategy that is working:**
Continued geographic roll-out of existing products and services driving strong revenue growth by gaining share across For Sale and Rentals

**Disciplined cost and investment management expected to drive high incremental margins:**
Disciplined cost structure built to drive positive GAAP net income in 2025 and strong GAAP profitability over time

**U.S. housing industry at attractive cyclical entry point:**
Housing turnover currently near 40-year cyclical lows with 50%+ potential upside at 6M in normalized annual transactions

**Mid-cycle target for $5B revenue with 45% Adjusted EBITDA margin:**[2]
Clear path to attractive organic revenue growth across For Sale and Rentals, plus additional opportunity when housing market normalizes

*Zillow Group Investor Deck – February 2025, Slide 3 (emphasis added)*

41. Zillow's 2025 Form 10-K reported $145 million in mortgage-segment revenue in 2024—a 51 percent increase year-over-year—and origination volume rising from $1.53 billion to $3.09 billion.[25] This rapid growth coincides with Zillow's increased and continuing integration of ZHL into its agent-referral programs. For example, in its Q2 2025 Shareholder Letter, Zillow reported "double-digit adoption rates across Enhanced Markets" and highlighted new in-app

---

[24] Zillow Group Investor Deck – February 2025, Zillow Group, (Feb. 11, 2025), available at https://investors.zillowgroup.com/investors/news-and-events/events-and-presentations/presentations/presentation-details/2025/Zillow-Group-Investor-Deck---February-2025/default.aspx.

[25] Zillow 10-K Annual Report (Feb. 11, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

messaging that allows buyers to communicate directly with agents and ZHL loan officers—tools designed to increase pre-approvals and conversion rates.[26]

42. Despite this revenue growth, the segment has remained unprofitable, with cumulative losses exceeding $280 million since 2017.[27] Zillow nevertheless continues to emphasize that mortgage and title are "adjacent services" essential to its long-term growth plan, demonstrating its reliance on cross-selling through Zillow Premier to make its mortgage arm viable.

*The Path Forward for Zillow Home Loans*

43. Industry comparison echoes this observation. As of September 2023, Zillow was the only major real estate technology firm expanding its mortgage-loan-originator headcount:[28]

---

[26] *See* Zillow, Q2 2025 Shareholder Letter, available at https://s24.q4cdn.com/723050407/files/doc_earnings/2025/q2/presentation/Zillow-2Q25-Shareholders-Letter.pdf.

[27] DelPrete, *The Path Forward for Zillow Home Loans* (Mar. 1, 2023), https://www.mikedp.com/articles/2023/2/28/the-path-forward-for-zillow-home-loans.

[28] DelPrete, *Zillow Still Crazy About Mortgages* (Sept. 7, 2023), https://www.mikedp.com/articles/2023/9/7/zillow-still-crazy-about-mortgages.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992



*Zillow Still Crazy About Mortgages*

44.     By conditioning access to its referral network on steering buyers to Zillow Home Loans, Zillow both gives and receives "things of value" for the referral of settlement-service business. This violates Section 8(a) of RESPA, 12 U.S.C. § 2607(a), which prohibits giving or accepting any fee, kickback, or thing of value pursuant to any agreement or understanding that business incident to a real estate settlement service shall be referred to any person. Zillow gives valuable benefits to Participating Agents, including, but not limited to, participation in Zillow Premier, priority access to leads, enhanced placement and visibility on the consumer facing portion of the Zillow platform, and higher-quality leads to potential client- homebuyers. In turn, Zillow receives monetary value from those agents through substantial advertising fees, referral-based "success-fee" payments tied to the very leads it controls, and additional revenue from downstream transactions directed by those agents—including mortgage origination through Zillow Home Loans and other settlement-related products offered within Zillow's integrated "housing super app" ecosystem.

45.     These practices reflect Zillow's deliberate strategy to use its control over online consumer traffic and agent relationships to expand its mortgage market share, even at the expense of transparency and consumer choice. By linking lead access to loan adoption, Zillow

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

transformed what began as a real estate advertising business into a vertically integrated system that channels buyers toward its own financial products.

**D. Zillow's Premier Program**

46. Zillow Group, through its operating subsidiary Zillow, Inc., operates the Zillow Premier program, an online marketplace that connects home buyers with licensed real estate agents. The program generates revenue from advertising, marketing, and technology products that help agents attract and manage prospective clients and is designed to connect Zillow's vast consumer traffic with Participating Agents and teams, thereby driving more residential transactions through Zillow's affiliated products and services.

47. Zillow offers two principal models within its Premier program: (a) a prepaid advertising product in which agents buy exposure within specific ZIP codes and receive leads proportionate to their spend; and (b) the Flex model, which is only offered to a limited number of "high-performing teams," who pay no upfront fee but instead agree to pay Zillow a "success fee (referral fee)"—typically 25 to 40 percent of the commission—when a transaction closes.[29]

48. Agents in either model must accept terms granting Zillow substantial control over marketing, lead handling, and client communications. Zillow monitors agent performance using recorded calls, response times, and conversion metrics.

49. Flex agents, in particular, must handle leads within Zillow's proprietary app, enabling the company to record and evaluate each interaction. Zillow exercises intensive oversight: calls are recorded, scripts called "ALM (Appointment, Location, Motivation)" are used to score agent compliance, and leaderboards rank teams by ZHL pre-approval rate and Predicted Conversion Rate (pCVR). [30]

---

[29] Zillow 10-K Annual Report (Feb. 11, 2025); *Flex FAQ*, Zillow Premier Agent, https://www.zillow.com/z/flex-performance-terms/flex-faq/ (last visited Oct. 23, 2025); *Zillow: Realtors Are Required to Drive Business to Zillow's In-House Lending Arm, Potentially Raising Buyer Costs; Agents Express Concern They Are Violating RESPA*, 13 CAPITOL FORUM 843 (Oct. 21, 2025).

[30] *See* Partner Guide: Flex Partner Performance Overview (Enhanced Markets), Zillow, https://view.highspot.com/viewer/d9e2f8d4184196c784aad166e21b254a#1 (last visited Oct. 23, 2025); *Zillow: Realtors Are Required to Drive Business to Zillow's In-House Lending Arm, Potentially Raising*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

50. When a consumer clicks "Contact Agent" or "Request a Tour," Zillow captures that information and assigns the lead to a Participating Agent chosen by Zillow rather than the property's listing broker. This intermediary structure allows Zillow — not the listing broker — to control which Participating Agents receive buyer leads and to condition that access on performance standards, such as those tied to Zillow Home Loans ("ZHL").

51. Within Flex, Zillow enforces performance standards that directly link ZHL referrals to lead allocation. Each team receives a Transaction Target and a ZHL Pre-Approval Target—about 10 percent of eligible leads that reached "met-with" status in the prior 90 days—with a required completion rate of 100 percent.[31]

52. While agents that meet or exceed these metrics are eligible for increased connection volume, agents who fall short of targets are subject to Zillow's "disengagement process," which reduces or halts lead flow until compliance is restored.[32]

53. One industry analysis includes Zillow's performance matrix, provided by Zillow to its Flex partners in 2023, which demonstrates this clearly:[33]

---

*Buyer Costs; Agents Express Concern They Are Violating RESPA*, 13 CAPITOL FORUM 843 (Oct. 21, 2025).

[31] *Flex Program Standards*, Zillow Premier Agent, https://www.zillow.com/z/flex-performance-terms/performance-standards/ (last visited Oct. 23, 2025); Partner Guide: Flex Partner Performance Overview (Enhanced Markets), Zillow, https://view.highspot.com/viewer/d9e2f8d4184196c784aad166e21b254a#1 (last visited Oct. 23, 2025); *Zillow: Realtors Are Required to Drive Business to Zillow's In-House Lending Arm, Potentially Raising Buyer Costs; Agents Express Concern They Are Violating RESPA*, 13 CAPITOL FORUM 843 (Oct. 21, 2025).

[32] *See, e.g.*, *Flex Compliance Policies & The Disengagement Process*, Zillow Premier Agent, https://www.zillow.com/z/flex-performance-terms/compliance/ (last visited Oct. 23, 2025); Partner Guide: Flex Partner Performance Overview (Enhanced Markets), Zillow, https://view.highspot.com/viewer/d9e2f8d4184196c784aad166e21b254a#1 (last visited Oct. 23, 2025).

[33] DelPrete, *Zillow Pressures Flex Teams to Perform* (Oct. 25, 2023), https://www.mikedp.com/articles/2023/10/25/use-zillow-home-loansor-else.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

| | Performance Metric | Performance Rating | | |
|---|---|---|---|---|
| Performance Metric | Successfully closed Flex home purchase / Fulfilled customer request for ZHL information | Poor < 75% | Moderate 75-99% | Strong >= 100% |
| Performance Rating | Poor < 10% | Eligible for Disengagement | Eligible for Disengagement | Decrease |
| | Moderate 11-19% | Eligible for Disengagement | Decrease | Eligible to Grow |
| | Strong >= 20% | Decrease | Eligible to Grow | Eligible to Grow |

*Zillow Pressures Flex Teams to Perform*

54. The same analysis reports that "Zillow asks Flex agents to send back leads that have expressed interest in learning more about Zillow Home Loans," but that the threshold for "interest" is extremely low: consumers "express interest" through a checkbox on the initial contact form that is checked by default—making the process opt-out rather than opt-in.[34] This default mechanism reinforces the control that Zillow exercises over its agents, and how it embeds mortgage referrals into its lead-generation funnel and ensures that consumers are routed to ZHL without meaningful knowledge or consent.

[34] DelPrete, *Zillow Pressures Flex Teams to Perform* (Oct. 25, 2023), https://www.mikedp.com/articles/2023/10/25/use-zillow-home-loansor-else.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Zillow Pressures Flex Teams to Perform*

55. Zillow also actively promotes ZHL to Participating Agents, describing it as "a trusted lending partner" for agents that can help them close faster than competitors and get clients pre-approved quickly.[35] This messaging reinforces that mortgage referrals are embedded within the agent's expected client service.

56. Zillow's system ensures that agents' financial interests are aligned with Zillow's corporate goal of maximizing mortgage originations through ZHL, not with their clients' best interests. Agents often depend on Zillow for leads and risk losing substantial income if they advise clients to shop for competing lenders. In turn, consumers are deprived of unbiased advice and may be discouraged from comparing loan options or pursuing financing through independent lenders who could offer lower rates or more favorable terms.

---

[35] *See, e.g.*, *Confidently get clients home with Zillow Home Loans*, Zillow Premier Agent, https://www.zillow.com/premier-agent/zillow-home-loans/ (last visited Oct. 23, 2025) (instructing agents to "[s]hare their [client's] contact info in the app and the Zillow Home Loans team will reach out to you and your client."

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**E. Consumer Harm**

57. Consumers who used Zillow Home Loans often paid higher interest rates than comparable borrowers who used independent lenders, and many lost access to beneficial programs that ZHL does not offer. Public reporting and expert reviews confirm that ZHL's products are limited in scope and generally less competitive on price. Borrowers funneled through Zillow's integrated referral system thus faced a narrower, more expensive set of financing options than were otherwise available in the open market, while under the false impression that their Zillow agent was acting in their best interest, as legally required, and had steered them in the right direction.

58. ZHL's mortgage products are neither unique nor competitively priced, and its range of offerings is materially narrower than those available through other lenders. In its 2025 review of Zillow Home Loans, Business Insider found that ZHL's products were "fairly standard[,]" ranking "around average" in affordability, with limited loan types and no rate transparency. It rated ZHL only three out of five overall, concluding that borrowers seeking specialized or lower-cost options will "need to work with a different lender."[36]

59. Similarly, Forbes Advisor's 2025 review rated ZHL only three out of five stars, reflecting its limited product range and above-average borrowing costs.[37] The publication noted that Zillow's interest rates "aren't as competitive as other lenders" and that the company "doesn't offer USDA loans or home-equity products[,]" nor does it "publish rates on its website[,]" "consider alternative data for credit profiles[,]" or "offer home equity loans or lines of credit[.]"[38]

---

[36] Molly Grace, *Zillow Home Loans Review 2025: No-Frills Online Lender*, Business Insider, https://www.businessinsider.com/personal-finance/mortgages/zillow-home-loans-review (last updated Jan. 23, 2025).

[37] Andrea Riquier, *Zillow Home Loans Review 2025,* Forbes (Jan. 4, 2024), https://www.forbes.com/advisor/mortgages/zillow-home-loans-reviews/#what_zillow_home_loans_offers_section.

[38] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Forbes emphasized that ZHL should not "be the only lender you [consumers] look to when shopping for a mortgage[,]" and provided alternatives.[39]

60. By designing its lead-routing systems to favor ZHL referrals, Zillow deprived consumers of valuable information about competing loan terms, origination fees, and available programs. Zillow's "opt-out" design—where consumers were pre-checked to "express interest" in Zillow Home Loans—further ensured that many borrowers were entered into the ZHL funnel without meaningful consent. Those consumers were often contacted by ZHL loan officers before they had an opportunity to compare rates or select an independent lender.

61. Zillow's public-facing platform presents Premier Agent and Flex participants as neutral, independent professionals. In reality, those agents operate under Zillow-imposed performance metrics that incentivize ZHL referrals. Consumers were not told that their agent's continued access to Zillow leads—and therefore their livelihood—depended on steering clients to Zillow's own lender. This misrepresentation deprived consumers of the material information necessary to evaluate the impartiality of their agents and the true costs of their loans.

62. The economic harm resulting from Zillow's conduct is substantial. Even small rate differentials can cost a borrower thousands of dollars over the life of a mortgage. Zillow's own materials and independent industry analysis show that a 1% rate change can reduce interest payments by tens of thousands of dollars on a 30-year loan.[40] By funneling Plaintiff and Class Members to ZHL rather than enabling broad comparison, competition, and education through neutral agents, Defendants created measurable rate-and-fee differentials relative to comparable borrowers who shopped the market or used independent lenders.

63. For example, because Ms. Armstrong was a first-time homebuyer in Anchorage, Alaska, she likely would have qualified for several federal and state programs designed to reduce

---

[39] *Id.*

[40] *See, e.g.*, Susan Kelleher, *How Does a 1% Interest Rate Change Affect Your Buying Power?*, Zillow Learning Center (Nov. 6, 2024), https://www.zillow.com/learn/interest-rate-impact-mortgages/; Chris Muller, *How much does a 1% difference in mortgage rate matter?*, Money Under 30, https://www.moneyunder30.com/1-percent-difference-mortgage-rate/ (last visited Oct. 24, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

interest rates, down payments, and closing costs—such as the Alaska Housing Finance Corporation First-Time Homebuyer and Closing Cost Assistance Programs, and USDA loans. Defendants steered Ms. Armstrong away from those lower-cost options and toward ZHL, which offers only a narrow range of conventional and FHA loans. Zillow Home Loans also does not participate in or inform borrowers about comparable first-time-buyer rebate or tax-credit programs—such as closing-cost assistance, down-payment rebates, or federal first-time-buyer tax credits—that could have provided thousands of dollars in savings at or after closing. Further, ZHL does not offer comparable home-equity loans or lines of credit, depriving Plaintiff of lower-cost tools to manage expenses or access accumulated equity after purchase. These structural gaps—combined with Zillow's steering practices—restricted Ms. Armstrong's ability to access affordable financing and forced her into a higher-cost, less flexible mortgage than she likely could have obtained through a neutral lender.

64. As a result of Zillow's conduct, Plaintiff and Class Members paid more for mortgage credit than they otherwise would have, lost access to competing loan programs and favorable terms, and were deprived of the independent advice that state and federal law require in residential real estate transactions. These injuries are uniform across the class and constitute the precise consumer harms RESPA and the WCPA were designed to prevent.

## CLASS ALLEGATIONS

65. This action is brought by Plaintiff individually and on behalf of the following Class, as defined below, pursuant to Rule 23(a), (b)(3) and 23(b)(2), (c)(4), and (g) of the Federal Rules of Civil Procedure:

> **Class:** All persons in the United States who were referred to Zillow Home Loans by a Participating Agent, and obtained a mortgage loan from Zillow Home Loans in connection with the purchase of residential property.[41]

[41] Plaintiff reserves the right to amend this definition based on discovery and any rulings in this case.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

66.     Plaintiff and the Class collectively consist of at least thousands of consumers who were referred to ZHL by a Participating Agent and subsequently obtained a mortgage loan ZHL. The Class is thus so numerous that joinder of all members is impractical. The identities of members of the Class can be readily ascertained from business records maintained by Defendants.

67.     The claims asserted by Plaintiff are typical of the claims of the Class, all of whom were harmed by Defendants' conduct alleged herein.

68.     Plaintiff will fairly and adequately protect the interests of the Class and does not have any interests antagonistic to those of other members of the Class.

69.     Plaintiff has retained attorneys who are knowledgeable and experienced in consumer protection, class action, and complex litigation.

70.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the Class predominate over those questions affecting only individual members. The common questions giving rise to common answers that move this litigation forward include but are not limited to:

a.  Whether Defendants conditioned real estate agents' access to consumer leads or placement priority on the referral of borrowers to Zillow Home Loans ("ZHL");

b.  Whether the leads, placement priority, and other benefits Defendants provided to agents constitute a "thing of value" under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), and its implementing regulation, 12 C.F.R. § 1024.14(d);

c.  Whether Defendants' conduct created an agreement or understanding—as defined by 12 C.F.R. § 1024.14(e)—pursuant to which settlement-service business was referred to Zillow Home Loans or other Zillow-affiliated entities;

d.  Whether Defendants' acts or omissions were unfair or deceptive in violation of the Washington Consumer Protection Act, RCW 19.86.010 *et seq.*, including

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

whether they had a substantial capacity to mislead reasonable consumers regarding the independence of participating agents or the neutrality of Zillow's platform;

e. Whether Defendants' failure to disclose the financial incentives, quotas, and conflicts inherent in their lead-distribution system constitutes an unfair or deceptive act or practice that offends established public policy;

f. Whether Defendants aided and abetted breaches of fiduciary duty by real estate agents who, because of Defendants' incentive structures and monitoring systems, steered clients to Zillow Home Loans rather than acting solely in those clients' best interests;

g. Whether Zillow knew that its compensation structures and referral quotas would cause agents to breach fiduciary duties owed to their clients, and whether Zillow substantially assisted those breaches;

h. Whether Defendants' integrated business model, including its Premier program, operated through uniform policies and algorithms that applied equally across consumers;

i. The extent of consumer harm, including whether borrowers who obtained loans through Zillow Home Loans paid higher rates or fees or lost access to more favorable financing options or assistance programs due to Defendants' conduct; and

j. Whether classwide injunctive or equitable relief is necessary to prevent ongoing unfair, deceptive, and unlawful practices.

71. In addition, the class device is the superior mechanism for handling this action, and a class trial is manageable.

72. This action is also appropriate as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Zillow's practices alleged herein impact Plaintiff and

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Class Members in the same ways, and any injunctive relief awarded will affect the Class as a whole.

**COUNT I**

**Violation of Section 8(A) of the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2607(a) (Against Defendants, on behalf of the Class)**

73. Plaintiff realleges and repeats the allegations contained in paragraphs 1-72 as if fully set forth herein.

74. Section 8(a) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), provides that "no person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

75. Each Defendant is a "person" under 12 U.S.C. § 2602(5).

76. ZHL originates residential mortgage loans secured by one-to-four-family dwellings, which are federally related mortgage loans. 12 U.S.C. § 2602(1); C.F.R. § 1024.2(b). The origination of those loans —and the services provided in connection with or incident to such settlements, including the marketing, lead-generation, referral, and coordination functions performed by Zillow Group, Inc. and Zillow, Inc.—are settlement services within the meaning of 12 U.S.C. § 2602(3). Accordingly, each Defendant participates in, benefits from, or provides services incident to real-estate settlement services covered by § 2607(a).

77. Defendants entered into and enforced agreements or understandings, express or implied, that agents receiving Zillow leads would refer homebuyers to ZHL for mortgage pre-approval and financing. These understandings were established by Defendants' pattern, practice, and course of conduct, including setting and monitoring ZHL pre-approval quotas, tying lead flow to ZHL adoption rates, and penalizing agents who failed to meet those targets. 12 C.F.R. § 1024.14(e). As further reflected in Regulation X, a "referral" includes any oral or written action

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

directed to a person that has the effect of affirmatively influencing the selection of a settlement-service provider. 12 C.F.R. § 1024.14(f)(1).

78. Through these arrangements, Defendants both gave and accepted "things of value." Defendants gave value to Participating Agents, such as participation in a money-making program, continued and priority access to leads, enhanced ad placement and visibility, and increased lead quality and volume, and accepted economic benefits, such as profits from Participating Agents' advertising expenditures, referral-based "success fees," and increased loan-origination revenue through Zillow Home Loans. *See* 12 U.S.C. § 2602(2); 12 C.F.R. § 1024.14(d).

79. As alleged above, Defendants knowingly structured and operated their lead-distribution systems so that lead flow, placement, and quality were conditioned on ZHL referrals and pre-approvals, ensuring that business incident to settlement services would be referred to ZHL. Zillow thus gave things of value to induce referrals and accepted things of value in return for those referrals, conduct that violates both the plain text of § 2607(a) and its implementing regulation. As an operator of a "settlement services" digital comparison-shopping platform, Zillow violates RESPA when it receives a "thing of value" for this referral activity.[42]

80. Defendants cannot invoke RESPA's safe harbors. 12 U.S.C. § 2607(c); 12 C.F.R. § 1024.14(g). The benefits Zillow provides are not "bona fide" payments because they are not fixed compensation for goods or services actually furnished, but conditional incentives and performance-based rewards tied to the number of ZHL referrals or pre-approvals achieved. *See* 12 U.S.C. § 2607(c)(1)-(2).

81. The broker-to-broker referral exemption likewise does not apply, as Zillow does not act as a real-estate broker or perform brokerage functions in these transactions. Its Premier program operates as a referral marketplace that sells and allocate consumer leads, collects

[42] *See* Real Estate Settlement Procedures Act (Regulation X); Digital Mortgage Comparison-Shopping Platforms and Related Payments to Operators, Fed. Reg. 88, 9162 (Feb. 13, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

contingent "success fees" tied to closed transactions, and performs no brokerage services in the purchase or sale of property. *See* 12 U.S.C. § 2607(c)(3).

82. Nor can Defendants invoke the affiliated-business-arrangement safe harbor because participating agents are independent contractors, not affiliates; consumers are not provided compliant written disclosures; and Zillow's design effectively conditions agents' continued access to leads—and therefore their livelihood—on funneling buyers to ZHL, eliminating any genuine freedom of choice. *See* 12 U.S.C. § 2607(c)(4).

83. Defendants' unlawful conduct deprived consumers of impartial advice, restricted competition among real estate agents and mortgage lenders, and increased the costs of mortgage credit and settlement services. Plaintiff and the Class suffered injury by paying higher rates and fees and by losing access to unbiased information and competing loan options.

84. Plaintiff and Class Members seek all forms of relief available under the Real Estate Settlement Procedures Act, including treble damages equal to three times the amount of any charge paid for the settlement services involved in the unlawful referrals. Each Class Member paid charges for mortgage-origination services provided by Zillow Home Loans that were incident to or part of the settlement services unlawfully referred through Zillow's programs. Plaintiff and Class Members also seek reasonable attorneys' fees and costs, as well as any equitable or ancillary relief the Court finds appropriate to prevent ongoing violations, remedy unjust enrichment, and deter similar conduct in the future. 12 U.S.C. § 2607(d).

## COUNT II

**Violation of the Washington Consumer Protection Act ("WCPA")**
**(Wash. Rev. Code An. §§ 19.86.010, et seq.)**
**(Against Defendants, on behalf of the Class)**

85. Plaintiff realleges and repeats the allegations contained in paragraphs 1-72 as if fully set forth herein.

86. Plaintiff and Class Members are "persons" under the Washington Consumer Protection Act ("WCPA") because they are natural persons. RCW 19.86.010(1).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

87.    Defendants are "persons" under the WCPA because they are corporations. RCW 19.86.010(1).

88.    Defendants engaged in unfair and deceptive trade acts and practices prohibited by the WCPA. RCW 19.86.020.

89.    Defendants conduct occurred in "trade" and "commerce" as defined by the WCPA because it involved the marketing and sale of real estate brokerage and mortgage-lending services, including related online referral and advertising programs directed to Washington consumers. RCW 19.86.010(2).

90.    At all relevant times, Defendants' acts and practices were deceptive and unfair because, among other things, they failed to disclose to consumers that Zillow required or incentivized Participating Agents to meet internal referral and pre-approval quotas with Zillow Home Loans. These undisclosed arrangements and steering requirements created conflicts of interest that deprived homebuyers of impartial advice, misrepresented the independence of Participating Agents, and inflated the cost of mortgage credit.

91.    Defendants' acts and practices were also unfair and deceptive because Defendants used their dominant position in the online real-estate market to coerce agents into steering clients toward ZHL and away from competing lenders, thereby undermining agents' fiduciary duties, restricting consumer choice, and distorting competition among lenders. This coercive scheme offends established public policy, is immoral and oppressive, and has caused substantial injury to consumers and the marketplace.

92.    Defendants' conduct affects the public interest because Zillow's real-estate marketplace serves millions of consumers nationwide, including at least thousands of Washington homebuyers, and these undisclosed acts and practices have a capacity to injure a substantial portion of the public.

93.    Defendants' acts and practices had the tendency and capacity to deceive substantial portions of the public. Defendants' marketing and referral programs created the false

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

impression that consumers were being matched with independent, impartial agents, when in truth, Participating Agents were subject to undisclosed quotas and performance metrics that required them to channel clients to ZHL or risk losing future Zillow leads and revenue opportunities. This concealed incentive structure was likely to mislead a reasonable consumer—particularly first-time homebuyers—into believing that their agent's recommendations were based solely on the buyer's best interest rather than Zillow's internal referral requirements. Such misrepresentations and omissions are clearly capable, and indeed, likely to deceive reasonable consumers and the public at large and therefore constitute deceptive acts under the WCPA.

94. Defendants' conduct also constitutes a *per se* unfair practice because it violates the Section 8(a) of RESPA, 12 U.S.C. § 2607(a).

95. Defendants' acts and practices also violate the public interest because they undermine the integrity of the home-buying process, interfere with consumers' ability to make informed choices among competing lenders, and erode public confidence in real-estate professionals who are legally obligated to act in the best interests of their clients. These practices are inherently capable of repetition and affect a substantial segment of the public.

96. Defendants' conduct offends the strong public policy embodied in both RESPA and Washington law, which safeguard consumers from hidden financial conflicts and self-dealing in real-estate transactions. Zillow's undisclosed quota and incentive structure is immoral and unscrupulous because it exploits the trust consumers place in their agents' independence, manipulates the market through coercive lead control, and results in tangible financial harm to homebuyers in the form of higher loan costs and reduced access to competitive mortgage programs.

97. Defendants' conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

98. Plaintiff and Class Members have suffered injury to their business or property as a direct and proximate result of Defendants' unfair and deceptive acts and practices. Defendants'

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

undisclosed and unfair referral and steering arrangements deprived consumers of unbiased brokerage advice and access to competitively priced loan products. As a result, Plaintiff and Class Members paid higher mortgage interest rates and closing costs, lost access to first-time homebuyer and discount programs, and incurred additional expenses associated with loans and settlement services they would not have selected had they been provided truthful and complete information about Defendants' practices. Plaintiff's and Class Members' injuries were directly and proximately caused by Defendants' unfair and deceptive acts and omissions.

99. Plaintiff and Class Members seek all forms of monetary and non-monetary relief permitted under the Washington Consumer Protection Act, including injunctive relief to stop Defendants' ongoing unfair and deceptive practices; actual damages in an amount to be proven at trial; treble damages up to $25,000 per Class Member, as authorized by law; and reasonable attorneys' fees and costs incurred in bringing this action. RCW 19.86.090. Plaintiff and Class Members also seek equitable relief, including restitution and disgorgement, to restore the benefits Defendants unfairly obtained through the conduct alleged herein.

## COUNT III
**Aiding and Abetting Breach of Fiduciary Duty**
**(Against Defendants, on behalf of the Nationwide Class)**

100. Plaintiff realleges and repeats the allegations contained in paragraphs 1-72 as if fully set forth herein.

101. Real estate agents who represent homebuyers in Washington and throughout the United States owe their clients fiduciary duties of loyalty, care, good faith, and full disclosure. These duties require agents to act solely in their clients' best interests, to provide honest and impartial advice about available mortgage options, and to avoid conflicts of interest that could compromise the client's decision-making. These duties do not materially differ among the states.

102. Zillow has long known that real estate agents owe these fiduciary duties to their clients. Zillow's internal policies, training materials, and public marketing repeatedly emphasize that buyers rely on their agents for professional guidance, and that agents owe duties of care,

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

loyalty, and advocacy to the buyers they represent. For example, in an article published through its online Learning Center, Zillow explains that a buyer's agent is expected to represent only the buyer's interests and to advise and advocate for the buyer throughout the transaction, noting that a buyer-agency agreement typically establishes an agency relationship between the consumer and the agent for the duration of that engagement.[43]

103.    The same article pays lip service to the obligation that agent compensation should be discussed upfront and clearly laid out;[44] yet, Zillow itself drafts and distributes the standardized buyer-agency form used through its platform, which does not disclose to consumers that its own lead-distribution programs tie agents' continued access to leads—and therefore their income—to meeting internal performance targets linked to Zillow Home Loans referrals. Nor do Zillow's public materials explain that the company itself profits when Participating Agents steer clients toward its affiliated lender. This lack of transparency stands in direct tension with Zillow's own public guidance that agents must disclose conflicts and act with undivided loyalty to their clients.

104.    Zillow also knew that steering clients to a lender based on the agent's or Zillow's financial interest—rather than the client's best interest—constitutes a breach of those fiduciary duties.

105.    The Participating Agents' fiduciary breaches caused consumers to incur loan costs, lose access to more favorable lending programs, and receive biased guidance from agents who appeared to act in their best interests but were influenced by Zillow's financial incentives, undisclosed to the consumers.

106.    Despite that knowledge, Zillow knowingly and substantially assisted Participating Agents in the primary wrong of breaching their fiduciary duties. Zillow's system made clear to

---

[43] Alycia Lucio, *The Buyer Agreement: What You Need to Know*, Zillow Learning Center (Apr. 29, 2024), https://www.zillow.com/learn/buyer-agreement/.

[44] Alycia Lucio, *The Buyer Agreement: What You Need to Know*, Zillow Learning Center (Apr. 29, 2024), https://www.zillow.com/learn/buyer-agreement/.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

participating agents that maintaining their income stream from Zillow required prioritizing Zillow's financial interests over their clients' best interests. Agents who followed Zillow's directives steered consumers away from competing mortgage lenders, discouraged rate comparisons, and failed to disclose that their recommendations were influenced by Zillow's incentive structure—and Zillow rewarded them for it, while concealing from consumers the financial conflict created by Zillow's referral quotas.

107. As a direct and proximate result of Zillow's substantial aiding and abetting Participating Agents of their breach of fiduciary duty, Plaintiff and the Class suffered damages, including increased borrowing and settlement costs. Plaintiff and Class Members seek to recover compensatory damages for these injuries, together with equitable relief, including restitution and disgorgement, as permitted by law.

## PRAYER FOR RELIEF

108. WHEREFORE, Plaintiff seeks that this matter be certified as a class action, that her attorneys be appointed Class Counsel, and that she be appointed Class Representatives.

109. Plaintiff and Class Members seek the following relief against Defendants:

a. Actual damages and other compensatory relief in an amount to be determined at trial;

b. Statutory and treble damages as authorized by law, including under 12 U.S.C. § 2607(d)(2) and RCW 19.86.090;

c. Restitution and disgorgement of profits and other unjust gains obtained through the conduct alleged herein;

d. Injunctive and equitable relief to prevent Defendants from continuing the unlawful, unfair, and deceptive practices described in this Complaint;

e. Reasonable attorneys' fees, costs, and expenses as permitted by law;

f. Pre- and post-judgment interest as allowed by law; and

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

g. Such other and further relief as the Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

110. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial for all claims so triable.

DATED this 7th day of November, 2025.

TOUSLEY BRAIN STEPHENS PLLC

By: *s/ Rebecca L. Solomon*
Jason T. Dennett, WSBA #30686
Rebecca L. Solomon, WSBA #51520
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Tel.: (206) 682-5600
Fax: (206) 682-2992
Email: jdennett@tousley.com
rsolomon@tousley.com

Adam J. Levitt, *pro hac vice forthcoming*
Amy E. Keller, *pro hac vice forthcoming*
DICELLO LEVITT LLP
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com

Corban Rhodes, *pro hac vice forthcoming*
Emma Bruder, *pro hac vice forthcoming*
DiCELLO LEVITT LLP
485 Lexington Ave., Tenth Floor
New York, NY 10017
Tel: (646) 933-1000
crhodes@dicellolevitt.com
ebruder@dicellolevitt.com

***Attorneys for Plaintiff and the Proposed Class***